CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUN 07 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BONNIE HARDY, | ) CASE NO. 4:12CV00024 |
| | ) |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) By: B. Waugh Crigler |
| Defendant. | ) U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 11, 2009 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C.§416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C.§636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The question presented is whether the Commissioner's final decision is supported by substantial evidence. 42 U.S.C.§405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING, in part, the plaintiff's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated January 19, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since May 11, 2009, her alleged date of disability onset.[1] (R. 47.) The Law Judge determined plaintiff's bilateral foot pain, hallux valgus (bunion) of the right foot, right patellar mal-tracking with osteoarthritis, and obesity were

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.§1382c(a)(3)(A).

severe impairments. (R. 47.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 49.) The Law Judge failed to discuss the weight he was assigning to the opinions of any of plaintiff's treating physicians and, instead, relied solely on the opinion of Dr. Julie Buchner, a consultative examiner (CE). (*See* R. 305-311.) He found that plaintiff possessed the residual functional capacity ("RFC") to perform the full range of sedentary work except that she would require the use of an assistive device for walking long distances or on uneven terrain and would need leeway for more frequent breaks throughout the day.[2] (R. 49-50.)

The Law Judge relied on portions of the testimony of Asheley Wells, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 32-35, 51-52.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform her past relevant work as a school bus driver, cashier, sewing machine operator, or waitress/server, but that she could perform other jobs existing in the national economy such as a charge account clerk, telephone information clerk, or food and beverage clerk. (R. 32-35, 51-52.) The Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's January 19, 2011 decision to the Appeals Council. (R. 1-11.) In its May 9, 2012 notice of action, the Appeals Council found an error of law in the Law Judge's decision due to his failure to evaluate and weigh the treating source opinions as well as a witness statement. (R. 53-54.) The notice informed the plaintiff that "[w]e plan to make a decision affirming the Administrative Law Judge's finding that you are not disabled." (R. 54.) The

---

[2] Sedentary work is defined in 20 C.F.R. §404.1567(a) as involving lifting no more than 10 pounds at a time with occasional lifting or carrying of objects such as files or small tools. A job in this category involves sitting, though a certain amount of walking or standing is often necessary.

2

notice further provided the Council's evaluation of the evidence and informed the plaintiff she could "send us more evidence...within 30 days" of its date and appear for further proceedings. (*Id.*)

On June 21, 2012, the Council issued its decision in which it noted that the plaintiff had submitted no comments or additional evidence and adopted the Law Judge's statements, findings, and conclusions as the final decision of the Commissioner. (R. 4.) Specifically, the Appeals Council found that "the treating source opinions of Michael J. Diminick, M.D., Julie N. Bucher [sic], M.D., and the other source opinion of the claimant's husband, Tommy Hardy needed to be evaluated and weighed."[3] (R. 4-5.) The Appeals Council gave little weight to the opinions of Dr. Diminick, Dr. Pamela McClure-Smith, and Tommy Hardy because they relied heavily on subjective symptoms which it did not find were supported by objective findings, and because those opinions were inconsistent with that of Dr. Buchner. (R. 5.) The Appeals Council affirmed the Law Judge's finding of disabled, and this action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept

---

[3] It is clear that the Council was referring to Dr. Buchner, but it equally is clear that she was a CE, not a treating physician. The Appeals Council did not weigh the opinion of Dr. Buchner, but did weigh the opinion of Dr. McClure-Smith.

3

as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

Plaintiff seeks reversal or remand on two grounds. First, she asserts that her complaints of disabling pain were not properly credited. (Doc. No. 18, at 17-20.) Second, as a corollary, she contends that the Appeals Council failed to give proper weight to the opinions of plaintiff's treating physicians. (Doc. No. 18, at 20-22.)

Plaintiff's alleged onset date of disability is May 11, 2009, although the objective medical evidence shows that her underlying medical condition surfaced earlier than that. Plaintiff began seeing Dr. Michael Diminick, an orthopedic specialist, on July 17, 2008. She presented with a history of knee problems which had required surgery in the past, and with increased pain in her knee which caused the knee to "give out" and she collapsed. (R. 272.) An MRI performed on July 22, 2008 showed: persistent lateral patellar subluxation of the right knee; tilt with interval development of extensive marrow edema throughout the patella; ill-defined distal quadriceps tendon fibers compatible with tendinosis and partial thickness tearing; questionable interval lateral patellar retinacular release with possible linear longitudinal defect within the lateral retinaculum with slight thickening of the posterior lateral retinaculum; and extensive cartilage loss within the patellofemoral joint compartment. (R. 273.) Plaintiff's MRI results were viewed as "most compatible with long standing patellofemoral maltracking" and small right knee joint effusion. (*Id.*)

On July 31, 2008, Dr. Diminick diagnosed plaintiff as suffering "persistent knee pain with degenerative arthritis of the patellofemoral joint." (R. 271.) He treated her with a stabilizing brace and recommended phase I exercises and Aleve. (*Id.*) On September 11, 2008, Dr. Diminick observed that plaintiff had a normal gait but presented with a valgus deformity, pain with patella

4

compression, and a positive J-sign. He informed her that the only surgical option would be a tubercle osteotomy,[4] but plaintiff was not interested at that time. (R. 270.) When plaintiff returned on May 14, 2009, three days after her alleged disability onset date, Dr. Diminick noted that plaintiff's knee pain had not improved and likely required further surgery. (R. 269.) Plaintiff, who had prior unsuccessful surgery, expressed no desire for surgery at that time, which Dr. Diminick believed was reasonable. (*Id.*)

On November 14, 2009, plaintiff was seen by Dr. Julie Buchner for a one-time consultative examination. Dr. Buchner noted that plaintiff reported three years of knee pain with occasional falling due to instability. (R. 306.) She noted that plaintiff presented an antalgic gait bilaterally, that her tandem walk was mildly abnormal, and that her standing was normal bilaterally, but that one foot standing was severely abnormal on the right and moderately abnormal on the left. She observed that plaintiff was unable to ambulate on her toes and heels, was unable to hop, and was unable to squat. (R. 308.) Dr. Buchner further observed that plaintiff suffered left knee crepitus and right knee crepitus (crunching or popping in the joint), and that her patella subluxes (incompletely or partially dislocates) with passive extension. (R. 308.)

Dr. Buchner diagnosed plaintiff as suffering right patellar maltracking with likely osteoarthritis of the right knee, and with right foot bunion with foot pain. (R. 309.) Although she could not explain plaintiff's alleged left foot pain, she noted that plaintiff's maltracking was well-documented both by MRI and physical examination, and that the malady could cause significant knee pain. (R. 309.) Dr. Buchner believed that operative intervention might help plaintiff, but opined that plaintiff was limited to standing or walking only two hours in a normal workday with

---

[4]"An osteotomy is the movement of the insertion of the patella tendon by cutting through it and then re-securing it with two screws, in order for it to heal in this new location at the insertion of the patella tendon as it inserts into the top of the tibia (shin bone)." *Tibial Tubercle Osteotomy*, ORTHOPEDIC SPECIALISTS, http://www.stlorthospecialists.com/content/237/Dr-Joseph-Ritchie/Knee-Hip-Conditions/Tibial-Tubercle-Osteotomy (last visited May 29, 2013).

more frequent breaks, and that plaintiff would need an assistive device for long distances or uneven terrain. She did not believe plaintiff had any manipulative or environmental limitations, but she noted plaintiff would be unable to bend, stoop, crouch, or climb. (R. 309.)

On March 15, 2010, plaintiff was treated by Pamela McClure-Smith, M.D., who, according to the record, had been plaintiff's primary care provider since at least 2000. (R. 294, 315.) Dr. McClure-Smith diagnosed plaintiff with depression, chronic pain in her legs and hips, and foot pain. (R. 316.) Dr. McClure-Smith noted that plaintiff's depression was long-standing, and that she suffered limited or low normal intellect. (R. 316.) On May 4, 2010, plaintiff was seen on referral from Dr. McClure-Smith by Octavio de Marchena, M.D., a neurologist, for a determination of the cause of her foot pain. (R. 341.) Upon testing, Dr. de Marchena opined that plaintiff's foot pain was not caused by inheritable neuropathy, but that her skeletal deformity was a likely culprit. (R. 341.)

On June 1, 2010, plaintiff returned to Dr. Diminick, who observed that plaintiff was wearing a metatarsal pad with no significant improvement. (R. 344.) He reported that plaintiff stated "she cannot stand and walk, and cannot do sedentary jobs because she lacks the training." (R. 344.) Dr. Diminick observed that plaintiff had experienced atrophy in her quadriceps with some tenderness on direct palpation. He advised plaintiff to continue with the metatarsal pad, gave her phase I exercises, and ordered a cane. (R. 343-344.)

Plaintiff's last medical record is from Lynchburg General Hospital from July 3, 2010. Plaintiff reported to the emergency room, complaining of a cough. (R. 357.) She was diagnosed with bronchitis, although her lab results tested positive for pertussis. (R. 352, 355.) There are no medical records from that date until the hearing before the ALJ on December 2, 2010.

The Law Judge acknowledged that plaintiff suffered "appreciable limitations that stem from the pain and symptoms related to her bilateral foot pain, hallux valgus of the right foot, and right patellar mal-tracking with osteoarthritis." (R. 50.) However, he found that this pain did not preclude plaintiff from sedentary work because of her activities of daily living and because he believed that plaintiff had admitted being capable of sedentary work. (R. 50.) The record shows that plaintiff could "prepare her own meals, do limited housework and chores, drive a vehicle, shop, use a computer, and do arts and crafts." (R. 50.) Yet, she testified that she spent most of the time sitting in a recliner, and that if she attempted chores, she needed to take a break and sit for at least an hour. (R. 28-30.) She also testified that her husband did the cooking, and that she could not bathe unless he was home to help her. (R. 29-30.) At best, these are minimal activities of daily living and fall short of providing substantial evidentiary support for a conclusion that plaintiff was capable of performing sedentary labor on a sustained basis in a competitive work environment.

The Law Judge's finding that plaintiff admitted an ability to perform sedentary work is premised on plaintiff's ambiguous statement reported by Dr. Diminick that "she cannot stand and walk, and cannot do sedentary jobs because she lacks the training." (R. 344.) The Law Judge interpreted this as an admission that she remained physically able to perform sedentary work, and "that but for a lack of training, she could do sedentary work." (R. 50.) If one thing is clear in this record it is that plaintiff consistently has asserted that her leg impairments and their effects have prevented her from working. The phrase in Dr. Diminick's report that the Law Judge seized upon to support his finding was preceded by "she cannot stand or walk." (R. 344.) Whether she believed she could be retrained is immaterial if, vocationally, her inability to stand or walk eliminated sedentary work. Under the Law Judge's interpretation of plaintiff's statement, any

7

individual who "cannot stand and walk" would be capable of sedentary work. However, according to the Commissioner's own regulations, if a claimant was not able to stand and walk, the claimant would be excluded from even sedentary work. 20 C.F.R. §404.1567(a).[5] The Law Judge's construction of plaintiff's statement, and the Commissioner's adoption of it, was unreasonable.

In determining plaintiff's RFC, the Law Judge did not rely on any other evidence, including the opinions of plaintiff's medical providers, which the Law Judge's decision itself did not weigh. Plaintiff claims to suffer disabling pain in her knee and her feet, which has been diagnosed through objective findings by her treating physicians. Plaintiff testified that she manages the pain in her leg by elevating it throughout the day, and that she has a prescription for ibuprofen, though she tries to avoid taking it as it exacerbates her stomach issues. (R. 26, 28-29.) The VE testified that, if plaintiff needed to elevate her leg due to pain, there would be no jobs available. (R. 34-35.) It is therefore clear that the credibility finding as to the intensity and limiting effects of plaintiff's pain is critical to the Law Judge's ultimate finding. Because the Law Judge's credibility finding is not supported by substantial evidence, this case must be remanded to the Commissioner for a credibility finding which takes into account the remainder of the record.

Although the opinions of plaintiff's treating physicians were not weighed by the Law Judge, the Appeals Council subsequently weighed these opinions and determined they were entitled to little weight. Plaintiff challenges the Appeals Council's decision, alleging that it failed to properly consider the factors listed under 20 C.F.R. §416.927(c) which must be accounted for in determining the weight to assign medical evidence. Specifically, plaintiff argues that the Appeals Council failed to consider the length of the treatment relationship and the specialization of Dr. Diminick. She further contends that the opinions of her treating physicians are consistent

---

[5] Plaintiff also explained at the hearing she had a learning disability which restricted her ability to "learn jobs quick enough." (R. 35.) Neither the Law Judge nor the Council addressed the effect such limitation would have on plaintiff's ability to perform alternate gainful activity.

8

with the record and supported by objective evidence. The record shows that Dr. Diminick had treated plaintiff since 2008, and Dr. McClure-Smith had treated her since at least 2000.

The Appeals Council gave little weight to the opinion of Dr. Diminick because he "relied heavily on the claimant's subjective report of symptoms, which were not supported by objective findings." (R. 5.) The Appeals Council also found that Dr. Diminick's opinion was inconsistent with the record because it was inconsistent with Dr. Buchner's opinion that plaintiff could perform sedentary work. (*Id.*) The Council discounted Dr. McClure-Smith's opinion on the same grounds. (*Id.*)

However, plaintiff's leg pain is well-documented by all examining sources throughout the record, including Dr. Buchner. Rather than relying solely on subjective symptoms, Dr. Diminick's diagnosis relied heavily on a 2008 MRI which demonstrated "long standing patellofemoral maltracking," as well as evidence of atrophy on a subsequent physical examination. (R. 273, 344.) Dr. Buchner opined that the claimant could have "significant knee pain" given the objective medical evidence. (R. 309.) Dr. de Marchena, who performed a neurological examination, noted that plaintiff's skeletal deformity could be causing her foot pain. (R. 341.) All of plaintiff's examining physicians, including the CE, Dr. Buchner, agree that plaintiff suffers diagnosable medical impairments which could cause significant pain. (R. 316.) The Appeals Council's decision simply ignores the objective MRI evidence and even portions of Dr. Buchner's opinion which affirm the basis for plaintiff's complaints of pain. Its ultimate determination that her complaints have no objective support and are inconsistent with the other evidence misconstrues the record and is not supported by substantial evidence.

Both the Law Judge's adopted determination of plaintiff's RFC and the Council's failure to properly assess the weight to be given plaintiff's treating sources under 20 C.F.R.§416.927(c) constitute good cause to remand this case for further proceedings.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING, in part, and DENYING, in part the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings to reassess plaintiff's credibility, her residual functional capacity, and the weight to be accorded plaintiff's treating sources.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. §636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

June 7, 2013
Date